IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT MOHNACKY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-13-CV-246-XR |
| | § | |
| FTS INTERNATIONAL SERVICES, LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Docket No. 20). After due consideration, the Court DENIES the motion.

## BACKGROUND

This case arises out of Plaintiff Robert Mohnacky's ("Plaintiff") former employment relationship with Defendant, FTS International Services, LLC ("FTS"). Plaintiff was employed by Defendant as a Field Coordinator from January of 2009 to August of 2010, with a six month interim, from May of 2009 to December of 2009, in which Plaintiff served as a Service Supervisor. Docket No. 20, Ex. 2, at ¶ 4.  During his employment as Field Coordinator and Service Supervisor, Plaintiff alleges that FTS made him work in excess of forty (40) hours per week, but FTS failed to compensate him for the overtime hours he worked. Docket No. 1.

On March 26, 2013, Plaintiff filed an original Complaint in this Court, alleging a cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201, *et seq.*, to recover for unpaid wages and overtime compensation. Docket No. 1.  The complaint alleges that during

the relevant time Plaintiff was employed by FTS, Defendant engaged in a willful policy that violated the FLSA by refusing to pay Plaintiff for his hours worked in excess of forty (40) hours per week. The complaint asserts that Plaintiff was improperly misclassified as a salaried employee, but in reality was non-exempt from the overtime requirements of the FLSA. Docket No. 1, at ¶ 15.

Defendant's Answer to Plaintiff's Original Complaint was filed in this Court on August 14, 2013. Docket No. 7.  In its Answer, Defendant denies that Plaintiff is entitled to overtime compensation because Plaintiff was appropriately classified as exempt under the FLSA, Docket No. 7, at § 7 ¶ 1, and was properly paid a salary for all hours worked, *Id.* at ¶ 29.

On August 20, 2014, Plaintiff filed this motion for partial summary judgment. Docket No. 20. Defendant responded on September 24, 2014.  Docket No. 26.

## LEGAL STANDARD

A court should enter summary judgment if the evidence, viewed in light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)).  A genuine issue for trial exists only if there is

sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party, however, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact that is sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## ANALYSIS

*1. Defendant's Liability*

Plaintiff has moved for partial summary judgment as to whether the executive exemption from overtime requirements applies to Plaintiff as Field Coordinator and Service Supervisor. Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *Meesook v. Gray Canyon Family Medical, P.A.,* No. SA-13-CV-729-XR, 2014 U.S.Dist. LEXIS 72317, at *3–4 (W.D. Tex. May 28, 2014) (citing 29 U.S.C. § 207(a)). In its Answer, FTS admits that it employed Plaintiff during the relevant times of this suit, and that it is an employer covered by the FLSA. Docket No. 7, at ¶¶ 4–5. An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that he has performed work for which he alleges he was not compensated. *Harville v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). In his Complaint, Plaintiff

asserts that he worked over forty (40) hours in a week but did not receive overtime compensation as is required by the FLSA. Docket No. 1 at ¶ 4. In its Answer, Defendant admits that Plaintiff may have worked in excess of forty (40) hours per week, Docket No. 7, at ¶¶ 23, 36, and affirmatively asserts that Plaintiff did not work in excess of forty (40) hours per week during some of the weeks relevant to this suit, Docket No. 7, at § 7 ¶ 5. Furthermore, in his deposition, Plaintiff alleges his work hours averaged approximately 110 hours per week. Docket No. 20, Ex. 3, at 18:19.

From the evidence, no genuine fact issue exists as to whether Plaintiff incurred some weeks that would potentially render him subject to the FLSA's overtime requirements. As a result, the Court finds that Plaintiff worked, at least some weeks, in excess of forty (40) hours per week.

    *a. Relevant Time Period and Service Supervisor Position*

The FLSA has a two-year limitations period that extends to three years for willful violations. *See* 29 U.S.C. § 255(a). Plaintiff instituted this lawsuit on March 26, 2013, and therefore, after applying the extended limitations period, the earliest period for which Plaintiff can recover damages in this FLSA suit is March 26, 2010. *Id.*; Docket No. 1. Plaintiff seeks no damages after August 29, 2010, for the time period following his promotion to Operations Supervisor. Docket No. 26. Moreover, the parties have stipulated to these facts and agree that the relevant time period for this suit is March 26, 2010 to August 29, 2010. *Id.*; *see also* Docket No. 20, Ex. 1, at ¶ 7; Docket No. 26, at 7–8.

Plaintiff's Motion addresses his employment with Defendant as both a Field Coordinator and as Service Supervisor. However, not only does the record reflect, the

Plaintiff also asserts, that he was not employed by Defendant as a Service Supervisor during the relevant time period in this suit. *See* Docket No. 20, Ex. 1, at ¶ 7 ("Plaintiff worked for Defendant as a Field Coordinator from January of 2009 to August of 2010, with a 6 month interlude from May of 2009 to December of 2009 in which he worked as a Service Supervisor.").

The record does not show additional facts to suggest that Plaintiff's employment as Service Supervisor should be considered regarding Defendant's liability; to the contrary, the evidence states that Plaintiff's employment as Service Supervisor even falls outside the FLSA's *extended* limitations period. *See* 29 U.S.C. § 255(a) (emphasis added); Docket No. 20, Ex. 2, at ¶ 4. To the extent that Plaintiff moves for summary judgment on the issue of whether his employment as a Service Supervisor qualifies as an executive exemption under the FLSA's overtime requirements, Plaintiff has failed to show that he is entitled to that judgment as a matter of law, and is therefore denied.

    b. *Executive Exemption*

"Though the FLSA establishes a general rule that employers must pay their employees overtime compensation, executive, administrative, and professional employees are exempt." *Meesook*, 2014 U.S. Dist. LEXIS 72317, at *5–6 (quoting *Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 492 (5th Cir. 2003)). As a general rule, "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense in which the employer has the burden of proof." *Hertz v. Woodbury Cnty, Iowa*, 566 F.3d 775, 783 (8th Cir. 2009) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)). In other words, the employer claiming an exemption bears the burden of proving the exemption applies and

exemptions are narrowly construed against the employer. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002).

In this case, the issue is whether the executive exemption to the FLSA's overtime requirements apply to Plaintiff as Field Coordinator. For purposes of the FLSA, an executive is an employee:

> 1) Compensated on a salary basis at a rate of not less than $455 per week, exclusive of board, lodging or other facilities;
> 2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> 3) Who customarily and regularly directs the work of two or more other employees; and
> 4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (2010). The executive exemption is conjunctive and accordingly, the employer who claims the exemption must meet each element for the exemption to apply. *See id*. It is undisputed that Plaintiff made over $455 per week while he was employed. Docket No. 7, at ¶ 16. However, the remaining elements must be analyzed by this Court.

    *i. Primary Duty is Management*

With respect to the term "management", the regulations list the following non-exhaustive activities as typically managerial:

> [I]nterviewing, selecting, and training employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold;

> controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102(a) (2010). As to the requirement that the duties be "primarily" managerial, the regulations state, "The term 'primary duty' means the principle, main, major, or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a) (2010). Factors to consider include:

> [T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id*.

Here, Plaintiff testified that as Field Coordinator, he was responsible for dealing with the "company men" (customer) at the site, inspecting the site to ensure adequate room and placement for equipment, making sure all members of the crew were present before leaving for the site, creating a schematic of the site and directing crew members to its plan, inspecting equipment to make sure it was set up correctly, and providing on-the-job training to Equipment Operators ("EO"s) and Service Supervisors. Docket No. 20, Ex. 1, at 4. Plaintiff contends that his primary duty was to ensure efficient fracking and Defendant's customer's satisfaction with the process. Docket No. 20, at 15. Plaintiff attempts to prove this assertion by the fact that he would receive a job packet from the Operations Manager that reflected the Operation Manager's decisions about quantity of equipment, materials, and labor pertaining to

7

a particular frac job, however, Plaintiff would also meet with the "company man" on his own for the purpose of inspecting the site to ensure adequate room and placement of the equipment, Docket No. 20, Ex. 2, at 2.

Furthermore, Plaintiff stated that his presence was necessary at the frac site to direct drivers where to set-up equipment according to his schematic. *Id.* Plaintiff also acknowledged that he was the highest ranking employee during the convoy and had the authority to remove a crew member from the convoy if Plaintiff believed he was not "job ready," Docket No. 20, Ex. 3, at 6, and had the authority to direct service supervisors and the crew to correct equipment that did not meet safety standards, *Id.* at 11. Plaintiff also stated that unless something necessitated his leaving, as in spotting another frac job, he spent most of his time outside with the crew, *Id.* at 12, and agreed that he considered his help and tips to crew members as on-the-job training, *Id.* at 26–27. This is further corroborated by Mark Anderson's affidavit, an Operations Manager who supervised Plaintiff in his role of Field Coordinator. Docket No. 26, at 88–89. The affidavit states that when Plaintiff was the field coordinator, he was the highest ranking employee in the field, had the responsibility to ensure the frac crew worked in accordance with Defendant's safety policies and other rules, and was also responsible for coaching and counseling any employee observed violating safety policies. *Id.* at 89 ¶¶ 4, 6.

Based on this evidence and considering the factors above, a reasonable jury could conclude that Plaintiff spent a significant part of his time performing supervisory functions, providing for the safety and security of the crew and property, and that his primary duty as Field Coordinator was managing frac crews.

*ii. Customarily and regularly directs work of two or more employees*

Turning to the third element, the question is whether Plaintiff, as a field coordinator, "customarily and regularly direct[ed] the work of two or more employees . . . " 29 C.F.R. § 541.100(a)(3) (2010). "The phrase 'two or more employees' means two full-time employees or their equivalent." 29 C.F.R. § 541.104(a). "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701.

As noted above, there is evidence that the service supervisors reported to Plaintiff and that his primary duty was managing a frac crew. There is further evidence in Plaintiff's deposition that each frac job generally consists of ten to twelve crew members, Docket No. 20, Ex. 3, at 10, and Plaintiff's managerial duties were customarily and regularly performed and were not considered one-time tasks, *Id.* at 17 (answering that he went to the yard every day "[t]o ensure that [his] staff . . . were all there").

Based on this evidence, a reasonable jury could conclude that Plaintiff, as a Field Coordinator, customarily and regularly directed the work of two or more full time employees.

> *iii. Authority to hire or fire employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight*

Turning to the fourth and final factor, the question is whether Plaintiff, as a Field Coordinator, "ha[d] the authority to hire or fire other employees or [whether his] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change in

9

status of other employees [were] given particular weight." 29 C.F.R. § 541.100(a)(4) (2010). "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change of status." 29 C.F.R. § 541.105.  Factors to consider include,

> [W]hether it is part of the employee's job duties to make such suggestions and recommendations; the frequency in which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon.

*Id*. Further, an employee does not suffer a change of status when a supervisor merely "change[s] her work schedule and ask[s] her to perform tasks which she had not previously been asked to perform."  *Williams v. Barnhill's Buffet Inc.*, 290 Fed. App'x. 759, 762 (5th Cir. 2008) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 2009)).

Here, Plaintiff asserts he did not hire or fire employees and he did not give recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees.  *See* Docket No. 20, Ex. 1, at 5 ¶¶ 17–21.  Plaintiff acknowledges that his job description for Field Coordinator includes "hiring, training, scheduling of work, grievances, performance counseling, and recommendations for promotions, demotions, and termination of employment."  Docket No. 26, at 85; *see id.* at 69–70.  However, Plaintiff disagrees that he gave recommendations for promotions and performance counseling while he was field coordinator.  *Id.* at 70 ("Recommendations for promotions and performance counseling, that didn't happen.").  Plaintiff further asserts that he never took formal disciplinary action by sending a crew member back to the yard for not being "job ready."

Docket No. 20, Ex. 1, at 5 ¶ 21.  Conversely, when an EO was promoted to service supervisor, Mark Anderson's affidavit states that he sought out, relied and gave particular weight to Plaintiff's input and opinion because Plaintiff observed the day-to-day work of the EOs.  *See* Docket No. 26, at 89 ¶ 5.  Moreover, the affidavit states that the Operations Manager frequently followed the Field Coordinator's recommendations for promotional and discharge decisions.  *Id.* at ¶¶ 5–7.

Based on this evidence, a genuine issue of material fact exists as to whether Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were given particular weight.  There is enough evidence to let a jury decide whether the fourth element of the executive exemption is met.  Therefore, the Court denies Plaintiff's motion for partial summary judgment regarding whether the executive exemption applies to Plaintiff as Field Coordinator.

*2. Damages*

Plaintiff has also moved for partial summary judgment on the issue of whether FTS willfully violated the overtime provisions of the FLSA. As noted above, the FLSA has a two-year limitations period.  *See* 29 U.S.C. § 255(a).  The limitations period extends to three years for willful violations.  *Id.*  An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the Act. *Singer v. City of Waco, Tex.,* 324 F.3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Mere negligence is insufficient to establish willfulness.  *See Mireless v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 (5th Cir. 1990) (citing *McLaughlin*, 486 U.S. at 135).  The burden is on the employee to show willfulness.  *Samson v.*

*Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).  In general, to show reckless disregard of the FLSA, an employee must show that the employer had some reason to know that its conduct violated the FLSA beyond mere ignorance of the law.  *Mireless*, 899 F.2d at 1416.  For example, a violation may be willful if the employer had previously been put on notice that its practices violated the statute. *See Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994).

Here, Plaintiff contends that FTS was on notice that its pay practices violate the FLSA because it had been sued for similar FLSA violations. Plaintiff's evidence of willfulness is his allegation that "[n]othing in the discovery documents exchanged between parties shows that Defendant conducted any kind of audit to determine whether its classification of Plaintiff as exempt complied with the FLSA".  Docket No. 20, at 17.  Plaintiff continues that the recent decision in *Smith v. Frac Tech Servs., LLC*[1], No. 4:09-CV-00679-JLH, 2011 U.S. Dist. LEXIS 3165 (E.D. Ark. Jan. 11, 2011), where a class of Field Engineers won summary judgment on their FLSA claims of overtime pay, "should have led Defendant to conduct an internal audit to make sure Defendant was complying with the FLSA in regards to its Service Supervisors and Field Coordinators." Docket No. 20, at 17.  Plaintiff adds that had the Defendant done so, it would know that Plaintiff, as a Field Coordinator, did not meet the fourth prong to the executive exemption and concludes that Defendant's decision to classify Plaintiff as exempt was a reckless disregard for its obligations under the FLSA.  Docket No. 20, at 17.

"While courts in the Southern District of Texas have found that prior litigation can support a finding a willfulness, *see, e.g., Sealey v. EmCare, Inc.*, 2013 U.S. Dist. LEXIS 5536, 2013 WL 164040, at *4 (S.D. Tex. Jan. 14, 2013); *see also Villegas v. Dependable Constr.*

---

[1] FTS International Services, LLC, is a limited liability company and is the successor-in-interest to Frac Tech Services, LLC. *See* Docket No. 1, at 3–4 ¶ 11; Docket No. 7, at 2–3 ¶ 11.

*Servs., Inc.*, 2008 U.S. Dist. LEXIS 98801, 2008 WL 5137321, at *27 (S.D. Tex. Dec. 8, 2008) (noting that, if the FLSA violations in the pending case resembled that of a prior lawsuit, 'it is possible that Defendants had knowledge that they were violating FLSA'), those decisions relied on prior FLSA litigation against defendants regarding the same legal issue." *Lipnicki v. Meritage Homes Corp.*, 2014 U.S. Dist. LEXIS 32951, at *32 (S.D. Tex. Feb. 13, 2014). In *Lipnicki*, the Defendant had been sued several times for FLSA overtime violations, however the Court found the existence of other litigation against Defendant did not demonstrate willfulness because the other suits involved different employment positions. *See Lipnicki*, 2014 U.S. Dist. LEXIS 32951, at *33.

The determination in *Smith v. Frac Tech Servs., LLC* was in regards to Field Engineers, a position different from any held by Plaintiff during his employment. The *Smith* court did however address several claims of Field Coordinators, the position held by Plaintiff at all times relevant to this case. *Smith* held that one Field Coordinator was exempt under the FLSA's executive exemption as a matter of law, and at the same time, denied all the other plaintiffs' summary judgments as to the non-applicability of the executive exemption. *See Smith*, 2014 U.S. Dist. LEXIS 3165, at *108–09. Moreover, the *Smith* case took place in Arkansas and the *Smith* Court notes that the duties of field coordinators vary from district to district. *Id*. at 78–79. For the above reasons, the Court finds the ruling in *Smith* to be insufficient to put Defendant on notice that its policy violates the FLSA.

Plaintiff further contends that because Defendant has not disclosed any policy or procedure that it used to assess whether Plaintiff, or Field Coordinators generally, were properly classified as exempt shows that Defendant "simply buried its head in the sand" and

13

therefore recklessly disregarded its obligations under the FLSA. *See* Docket No. 20, at 17; Docket No. 27, at 5–6. However, the absence of such an audit would be insufficient to determine willfulness as a matter of law. According to *McLaughlin*, the employer must show a reckless disregard, and mere negligence to perform an audit is insufficient to establish willfulness. *See* 486 U.S. at 133–35.

Accordingly, the Court finds that Plaintiff has not introduced evidence sufficient to support a finding of willfulness, and therefore, Plaintiff's motion for partial summary judgment is denied in regards to the FLSA's extended limitations period.

## CONCLUSION

In light of the foregoing analysis, Plaintiff's motion for summary judgment (Docket No. 20) is DENIED with respect to the FLSA executive exemption and DENIED with respect to Plaintiff's claims on willfulness. Whether Plaintiff as Field Coordinator falls under the FLSA's executive exemption, Defendant made a willful violation of its FLSA requirements, and the amount of damages, if any, will be determined at trial, should the parties not resolve those issues before that time.

It is so ORDERED.

SIGNED this 2nd day of October, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE